**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | |
| Plaintiff, | |
| v. | No. 23-CV-0928-DLF |
| UNITED STATES FOREST SERVICE, | |
| Defendant, | |
| RESOLUTION COPPER MINING, LLC, | |
| Intervenor. | |

**DECLARATION OF STERLING HUNDLEY IN SUPPORT OF
RESOLUTION'S MOTION FOR SUMMARY JUDGMENT**

I, Sterling Hundley, declare as follows:

1. I am over the age of 18 and am competent to make this declaration. The following facts are within my personal knowledge and based on my review of relevant documents.

2. Resolution Copper Mining, LLC is a limited liability company owned by subsidiaries of the Rio Tinto Group and the BHP Billiton Group.

3. I have worked at Resolution since 2006. Since 2011, I have served as Resolution's Financial Operations Officer at Resolution. In this role, I am responsible for all financial operations and controls at Resolution's project in Arizona, where I provide short and long-term strategic advice and analysis on local taxation and business opportunities. I manage economic models used for long-term investment analysis and am also responsible for maintaining compliance with Rio Tinto Group Accounting, Project Development, Risk Analysis, and other Rio Tinto standards.

4.        From 2009 through 2011, I worked as the Controller for Resolution. In that role, I was responsible for all financial and commercial aspects of the Resolution Project, including accounting, treasury, procurement, compliance, and general reporting functions.

5.        From 2006 through 2009, I was Resolution's Chief Accountant. In that role, I was responsible for all accounting, treasury, and reporting functions. This included shared service aspects of month-end close, account reconciliation, intercompany billing, accounts payable, and other shared service areas, as required. I also managed the external audit process relative to project spend.

6.        Before joining Resolution, I worked in accounting and financial management for over 18 years at ConocoPhillips, Circle K Corporation, the McClane Company, and T.E.N. Private Cable. My responsibilities in those positions included managing risk management and remediation reserves of $1 billion; performing internal accounting and financial management for over $300 million in annual sales; preparing operating budgets and projections; and developing, analyzing, and submitting reports related to environmental issues, cost containment initiatives, and acquisitions and mergers.

7.        I hold a B.S. degree in finance from Arizona State University, which I obtained in 1989, and have been a licensed CPA in the State of Arizona since 2000.

**Resolution Copper Project & Appraisals**

8.        Resolution is currently developing one of the world's largest untapped copper deposits (the "Project").

9.        In December 2014, Congress passed the Southeast Arizona Land Exchange and Conservation Act, 16 U.S.C. § 539p (the "Act"), as part of a lands package that was included in the National Defense Authorization Act. The Act provides that certain Forest Service land shall

be exchanged for certain non-federal lands held by Resolution.

10.    The Act requires that appraisals be conducted on the Forest Service land and Resolution land that are the subjects of the exchange. The appraisals are to include a comparable sales approach and a detailed income capitalization approach analysis of the market value of the Federal land.

11.    In or around late 2018, the Forest Service contracted with Weissenborn Appraisal, LLC to conduct the appraisals. Weissenborn subcontracted with experienced mineral appraisers.

**Resolution's Confidential Information**

12.    Resolution was required to submit extensive, highly confidential information over the course of the appraisal process. I was personally involved with Resolution's providing of information to inform the appraisal, including providing the appraisers with the types of information that are the subject of Resolution's Motion for Summary Judgment.

13.    Resolution understood when it provided its information to the appraisers that the information would be treated as confidential and that the appraiser and U.S. Forest Service would maintain its confidentiality.

14.    In particular, in 2019, before Resolution sent any records to the appraisers, I spoke with a geologist subcontracted by Weissenborn who would receive the sensitive information and informed him that the documents Resolution planned to submit were highly confidential. This was acknowledged and I was assured that their confidentiality would be maintained.

15.    I have carefully reviewed the redacted versions of the Technical Appraisal Review Report ("Review Report") and Appraisal Report Summary ("Report Summary") that the Forest has disclosed in this lawsuit. I have not seen unredacted versions of those documents.

16.     I have compared those redacted documents to the confidential information that Resolution provided directly or indirectly to the appraisers. Because I have not had access to the unredacted documents, I cannot state with certainty what information they contain. But based on my close review of the redacted Review Report and Report Summary, my first-hand knowledge of what Resolution provided to the appraisers, and my experience with and knowledge of federal land appraisals, I believe that the Review Report and Report Summary contain redactions of Resolution's confidential information.

**Information from a Mining Report Commissioned by Resolution**

17.     In approximately July 2019, as part of the appraisal process and at the direction of the Forest Service, Resolution engaged an independent third-party software modeling company to model the quality and quantity of the ore deposit and to develop a mine plan that outlined future metal production and recovery.

18.     Resolution provided the modeling company extensive confidential information and data inputs regarding the orebody, which it had gathered through years of exploratory drilling, analysis, testing, and modeling. This information included, among many other things, Resolution orebody characteristics such as density and grade. Resolution also provided the company with metal recovery rates for copper, silver, and molybdenum.

19.     The modeling company also created a mining plan report using the information that Resolution provided. That mining plan report contains the company's results and recommendations to Resolution on how to mine the deposit.

20.     Both the information that Resolution shared with the modeling company and the mining plan report created by the modeling company is extremely valuable to Resolution.

Resolution would not and has not shared it publicly or with competitors. Even within Resolution, the information is on a need-to-know basis.

21.    The orebody characteristics are sensitive; if competitors were to obtain the mining plan report or the data and inputs that Resolution provided to the modeling company, they could anticipate Resolution's forecast of copper supply to the market for potential manipulation and advantage.

22.    Based on my close review of the Review Report and Report Summary, it appears that some of the confidential information that Resolution provided to the modeling company is contained in those documents.

23.    The scope of work between Resolution and the third-party modeling company was set forth in a document called "Scope of Work for United States Forestry Service Land Evaluation." The Scope of Work document contained a confidentiality statement that stated the document "contains information that is confidential to companies within the Rio Tinto Group" and prohibited the sharing of Resolution's information with anyone else absent Resolution's "prior written approval."

**Concentrate Transport Costs**

24.    From August 2019 through April 2022, I periodically provided the appraisers with extensive confidential and highly sensitive data spreadsheets regarding Resolution's estimated costs associated with the concentration and roasting processes, including its concentrate transport costs.

25.    Both the Review Report and the Report Summary have headings titled "Concentrate Transport Costs," under which they discuss various sources of information on concentrate transport costs that the appraisers evaluated. It appears that some of Resolution's

confidential information on the concentrate transport costs is therefore included or referenced in the records that the Forest Service released to Plaintiff as part of this lawsuit.

26.     Resolution's concentrate transport costs are highly confidential and competitively sensitive. Resolution would never share that information publicly or with competitors. Even within Resolution, only select members of the commercial sales and marketing team are privy to this information.

27.     This type of information, if disclosed, would be extremely valuable to Resolution's competitors and would place Resolution at a disadvantage relative to them.  Similar to other commodities, the price for copper is sensitive, and the discrete elements that comprise the costs to produce copper are equally sensitive to protect consumers from market manipulation.

**Production and Recovery Information**

28.     In August 2019, I provided the appraisers with spreadsheets containing confidential and highly sensitive data and schedules regarding Resolution's anticipated yearly production and recovery of copper, silver, and molybdenum. The charts entitled "MWA Cash Flows" in the Review Report and the Report Summary contain columns that detail this type of information by year. It therefore appears that Resolution's confidential data and schedules are or may be included in the documents that the Forest Service has released to Plaintiff as part of this lawsuit.

29.     The data and schedules concerning Resolution's production and metal recovery are highly confidential. Resolution keeps this information closely held and does not publicly disseminate it.

30.     This type of information, if disclosed, would be valuable to Resolution's competitors and would place Resolution at a disadvantage relative to them.

-7-

31.     There may be additional confidential information belonging to Resolution in the Review Report and the Report Summary.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct to the best of my knowledge.

Executed within the United States this 12th day of September 2024.

*Sterling Hundley*
Sterling Hundley