UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | |
| Plaintiff, | |
| v. | |
| UNITED STATES FOREST SERVICE, | Civil Action No. 23-0928 (DLF) |
| Defendant, and | |
| RESOLUTION COPPER MINING, LLC, | |
| Intervenor. | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Table of Contents ................................................................................................ i

Table of Authorities ............................................................................................ ii

ARGUMENT ........................................................................................................ 2

    I.     Plaintiff Concedes Nearly All of Defendant's Statement of Material Fact ........... 2

    II.    It is Uncontested and Undisputed that the Forest Service Conducted a Reasonable Search ................................................................................................ 5

    III.   The Undisputed Record and Controlling Case Law Establish that the Forest Service Lacks Control Over the Oak Flat Appraisal. ............................................. 8

    IV.   The Undisputed Record Shows that the Forest Service Properly Withheld Exemption 4 Material ......................................................................................... 13

          A.     The Forest Service Redacted Commercial Information............................ 14

          B.     The Withheld Information Was Obtained from A Person ......................... 16

          C.     All the Withheld Material is Confidential ................................................ 18

          D.     The Disclosure of Withheld Information Will Result in Foreseeable Harm ................................................................................................ 23

    V.    The Undisputed Record Shows that the Forest Service Properly Withheld Exemption 5 Material. ......................................................................................... 25

          A.     The Withheld Information Redacted under Exemption 5 is Deliberative  25

          B.     The Forest Service Sufficiently Demonstrated that the Release of Exemption 5 Material Would Cause Foreseeable Harm............................ 30

    VI.   The Court Should Dismiss Plaintiff's Attempt to Raise a Policy-and-Practice Claim. ................................................................................................................. 34

Conclusion .......................................................................................................... 36

# TABLE OF AUTHORITIES

Cases ................................................................................................................................ Page(s)

*Baker & Hostetler LLP v. U.S. Dept of Commerce*,
   473 F.3d 312 (D.C. Cir. 2006) ................................................................................... 15

*Brannum v. Dominguez*,
   377 F. Supp. 2d 75 (D.D.C. 2005) ............................................................................. 27

*Brett v. Brennan*,
   404 F. Supp. 3d 52 (D.D.C. 2019) ............................................................................. 26

*Brown v. Perez*,
   835 F.3d 1223 (10th Cir. 2016) ........................................................................... 18, 19

*Budik v. Ashley*,
   36 F. Supp. 3d 132 (D.D.C. 2014) ............................................................................. 34

*Burka v. U.S. Health & Human Serv.*,
   87 F.3d 508 (D.C. Cir. 1996) .............................................................................. 11, 12

*Burke v. Gould*,
   286 F.3d 513 (D.C.Cir.2002) ................................................................................. 5, 13

*BuzzFeed Inc. v. U.S. Dep't of Just.*,
   Civ. A. No. 19-1977 (EGS), 2023 WL 6847008 (D.D.C. Oct. 17, 2023) ............................. 24

*Cause of Action Inst. v. OMB*,
   10 F.4th 849 (D.C. Cir. 2021) .................................................................................... 12

*Colo. Wild Pub. Lands v. U.S. Forest Serv.*,
   691 F. Supp. 3d 149 (D.D.C. 2023) ..................................................................... passim

*Flathead Joint Bd. of Control v. U.S. Dep't of the Interior*,
   309 F. Supp. 2d 1217 (D. Mont. 2004) ...................................................................... 15

*Food Marketing Inst. v. Argus Leader Media*,
   588 U.S. 427 (2019) .................................................................................................. 20

*Forsham v. Harris*,
   445 U.S. 169 (1980) ........................................................................................... 10, 11

*Freeman v. Bureau of Land Mgmt.*,
   526 F. Supp. 2d 1178 (D. Or. 2007) .......................................................................... 17

*Gardels v. Central Intelligence Agency*,
   639 F.2d 770 (D.C. Cir. 1980) ..................................................................................... 3

*Gleklen v. Democratic Cong. Campaign Comm'n, Inc.*,
   199 F.3d 1365 (D.C. Cir. 2000) ................................................................................. 18

*Gulf & W. Indus., Inc. v. United States*,
   615 F.2d 527 (D.C. Cir. 1979) ................................................................................... 17

*Harrison v. District of Columbia*,
   Civ. A. No. 00-3008 (RBW), 2006 WL 949856 (D.D.C. Apr. 10, 2006) ............................. 5

*Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*,
   101 F.3d 145 (D.C. Cir. 1996) ................................................................................. 3, 4

*James Madison Project v. Dep't of Just.*,
   302 F. Supp. 3d 12 (D.D.C. 2018) ............................................................................. 34

*Judicial Watch, Inc. v. Department of Justice*,
   20 F.4th 49 (D.C. Cir. 2021) ..................................................................................... 26

*Khine v. U.S. Dep't of Homeland Sec.*,
  943 F.3d 959 (D.C. Cir. 2019).................................................................................. 35
*Kissinger v. Reps. Comm. for Freedom of the Press*,
  445 U.S. 136, (1980)................................................................................................ 12
*Larson v. Nothrop,*
  *Cor.*, 21 F.3d 1164 (D.C. Cir. 1994)....................................................................... 35
*Leopold v. Dep't of Just.*,
  Civ. A. No. 19-3192 (RC), 2021 WL 124489 (D.D.C. Jan. 13, 2021) .................... 25
*McKinley v. Bd. of Governors of Fed. Res. Sys.*,
  849 F. Supp. 2d 47 (D.D.C. 2012)............................................................................ 29
*Montrose Chemical Corp. v. Train*,
  491 F.2d 63 (D.C. Cir. 1974).......................................................................... 26, 27, 33
*Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*,
  36 F. Supp. 3d 384 (S.D.N.Y. 2014)......................................................................... 17
*Organization for Competitive Markets v. Office of Inspector General*,
  Civ. A. No. 14-1902 (EGS), 2024 WL 4753818 (D.D.C. Nov. 12, 2024) ........................... 24
*Payne Enters., Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988).................................................................................. 35
*People for the Ethical Treatment of Animals v. Dep't of Health & Human Serv.*,
  *(PETA)*, 901 F.3d 343 (D.C. Cir. 2018).................................................................... 25
*Reliant Energy Power Gen., Inc. v. F.E.R.C.*,
  520 F. Supp. 2d 194 (D.D.C. 2007).......................................................................... 29
*Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*,
  698 F. Supp. 3d 82 (D.D.C. 2023)....................................................................... 20, 22
*Starkey v. U.S. Dep't of Interior*,
  238 F. Supp. 2d 1188 (S.D. Cal. 2002)..................................................................... 15
*Sussman v. U.S. Marshal Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007)................................................................................ 34
*Twist v. Meese*,
  854 F.2d 1421 (D.C. Cir. 1988).................................................................................. 3
*ViroPharma Inc. v. HHS*,
  839 F. Supp. 2d 184 (D.D.C. 2012).......................................................................... 26
*Wannall v. Honeywell, Inc.*,
  775 F.3d 425 (D.C. Cir. 2014).................................................................................. 26
*Wash. Post Co. LLP v. U.S. Small Bus. Admin.*,
  502 F. Supp. 3d 1 (D.D.C. 2020)......................................................................... 22, 23
*Wilson v. Fed. Commc'ns Comm'n*,
  Civ. A. No. 21-0895 (RMM), 2022 WL 4245485 (D.D.C. Sept. 15, 2022)........................... 23
*Winston & Strawn, LLP v. McLean*,
  843 F.3d 503 (D.C. Cir. 2016)................................................................................ 6, 7
*Wolfe v. HHS*,
  839 F.2d 768 (D.C. Cir. 1998).................................................................................. 27

Statutes

16 U.S.C. §539p(c)(9)(B) ............................................................................................ 32
16 U.S.C. § 539p(c)(4).................................................................................................. 33

Rules

Fed. R. Civ. P. 8(a)(1) ............................................................................................... 35

Fed. R. Civ. P. 15 ...................................................................................................... 35

Fed. R. Civ. P. 56(a) ................................................................................................... 4

Fed. R. Civ. P. 56(c)(1)(A) ..................................................................................... 3, 4

Fed. R. Civ. P. 56(c)(1)(B) ......................................................................................... 4

Fed. R. Civ. P. 56(c)(B) ........................................................................................... 23

Fed. R. Civ. P. 56(e)(2) ..................................................................................... 19, 23

Defendant, the United States Forest Service ("Forest Service"), replies in further support of its motion for summary judgment in this Freedom of Information Act ("FOIA") case and responds in opposition to Plaintiff Center for Biological Diversity's cross-motion for summary judgment. Defendant does not contest but fully incorporates and adopts the summary judgment motion of Intervenor Resolution Copper Mining, LLC ("Resolution Copper") to further defend the sufficiency of its Exemption 4 withholdings.

After reviewing Defendant's motion for summary judgment, Plaintiff no longer contests the sufficiency of the Forest Service's search for responsive records, which was reasonably calculated and supported by the Forest Service's detailed affidavit from Margaret Scofield ("Scofield Decl.") (ECF No. 35-3). Plaintiff, nonetheless, argues that the Appraisal for the legislated land exchange involving Oak Flat ("Oak Flat Appraisal) is an agency record. As for the remaining two records responsive to Plaintiff's requests that were produced in part—the Technical Appraisal Review Report ("Technical Report") and Appraisal Report Summary ("Summary Report")—Plaintiff continues to challenge the proprietary of the Forest Service's application of Exemptions 4 and 5 to protect confidential commercial information and deliberative process materials contained within those records. Plaintiff further claims that the Forest Service failed to reasonably segregate all non-exempt information.

As an initial matter, Plaintiff fails to contest and therefore concedes most of Defendant's statements of undisputed material fact ("Defendant's Statements of Fact" or "Def.'s Stmt."). Because of this, Plaintiff cannot point to any materially disputed fact or supporting caselaw to contest that the Forest Service lacks control over the Oak Flat Appraisal. Likewise, the undisputed record supports, and Plaintiff cannot contest, that Exemption 4 and 5 apply to protect the release of confidential commercial information and deliberative process material. Moreover, Plaintiff

speculates, but fails, to overcome the presumption of regularity that Defendant properly released all reasonably segregable non-exempt information.

As a final matter, Plaintiff's cross motion for summary judgment also raises for the first time, a policy and practice claim. The Court, however, must not consider this claim, which Plaintiff never included on the face of the pleadings, let alone sought leave to amend at any point in this case. Indeed, attempting to bootstrap such claim through a responsive summary judgment briefing is not the proper mechanism for asserting such claim and is unduly prejudicial.

For these reasons and those that follow, the Court should grant Defendant's summary judgment motion and deny Plaintiff's cross-motion for summary judgment.

## ARGUMENT

### I.    <u>Plaintiff Concedes Nearly All of Defendant's Statement of Material Fact</u>

As an initial matter, Plaintiff's Response to Defendant's Statement of Material Facts largely fails to dispute, or alternatively fails to reference evidence that disputes, Defendant's Statements. Therefore, the Court may treat Defendant's Statements as conceded. *See* Standard Order, ¶ 5(d)(v), ECF No. 4.

When moving for summary judgment, Local Rule 7(h) requires "[e]ach motion for summary judgment . . . be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue." LCvR 7(h). In response, Local Rules require that "[a]n opposition to such motion shall [also] be accompanied by a separate concise statement of genuine issues." *Id.* In addition, this Court also requires "the party responding to a statement of material facts [to] (1) restate the movant's statement of undisputed material fact in numbered paragraphs, and (2) immediately follow[] each numbered paragraph [with] the opponent's response to that stated fact." Standard Order ¶ 5(d)(iii), ECF No. 4. A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record," or

"showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A). Thus, this Court warns that "[i]f an opposition fails to include . . . a response to the movant's statement of facts, or specific references to the parts of the record relied upon to support the . . . response, the Court may treat as conceded any facts asserted in the movant's statement of facts." Standard Order ¶ 5(d)(v), ECF No. 4.

"'The procedure contemplated by the[se] rule,'" are not trivial and "'require[s] strict compliance,'" in order to assist the Court with "'isolat[ing] the facts that the parties assert are material, distinguish[ing] disputed from undisputed facts, and identifying the pertinent parts of the record.'" *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (citing *Gardels v. Central Intelligence Agency*, 639 F.2d 770, 773 (D.C. Cir. 1980)). After all, "'a district court should not be obliged to sift through hundreds of pages of [records] in order to make [its] own analysis and determination of what may, or may not, be a genuine issue of material fact.'" *Id.* (citing *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988)).

Here, although Plaintiff responded to each of Defendant's Statements, Plaintiff's responses fail to properly contest or cite to a part of the record relied upon to contest the statements; and therefore, Plaintiff's responses must be deemed an admission of the statements to which they respond. First, for example, many of Plaintiff's responses state merely that Plaintiff "lacks knowledge or information sufficient to form a belief as to the truth of this statement." Pl.'s Resp. to Def.'s Stmt. ("Pl.'s Resp. Stmt.") ¶¶ 7, 11–12, 14, 15, 17–27, 29, 35–36, 38, 40–42, 44–73, 75–77, 80–85, 91–92, ECF No. 37-3. Because this common refrain, however, does not controvert the statement to which it responds, let alone cite to any part of the record relied upon to controvert that statement, the Court may treat facts to which the Plaintiff responds by "lacking knowledge" as

admitted. *See* LCVR 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted[.]"); *see also* Standard Order ¶ 5(d)(v), ECF No. 4.

Second, and similarly, Plaintiff's responses frequently state vaguely that "to the extent [the statement] is inconsistent with the [cited record]," Plaintiff "disputes this statement." Pl.'s Resp. Stmt. ¶¶ 8–10, 78–79, ECF No. 37-3. But again, this vague response does not specify whether the fact at issue is genuinely in dispute. In addition, to the extent Plaintiff attempts to treat this response as an effort to dispute Defendant's statements, Plaintiff's response fails to cite to the specific parts of the record that contest the statement at issue, or that demonstrate that the statement is otherwise unsupported. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B) (A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record," or "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). Thus, the Court can treat such vague responses as admissions of the statements of fact to which they respond.

Third, Plaintiff disputes some of Defendant's Statements as "speculative and not supportive." Pl.'s Resp. Stmt. ¶¶ 74, 86–90, ECF No. 37-3. But this too is an improper response because it is a legal argument that does not address whether the record relied upon to support the statements is either disputed or otherwise inadmissible. *See Jackson*, 101 F.3d at 153 (striking statements of fact and responses thereto that were legal arguments); Fed. R. Civ. P. 56(c)(1)(B), 56(c)(2). Indeed, merely arguing that a fact is speculative does not mean that the evidence supporting it is speculative or inadmissible and it is up to the Court to determine, whether on summary judgment, the facts are sufficient to award judgment as a matter of law. Fed. R. Civ. P. 56(a).

Fourth, although Plaintiff's responsive brief argues that evidence on which Defendant relies is hearsay, Plaintiff, again, fails to identify, with specificity, which facts in Defendant's Statement rely on impermissible hearsay. *See* Pl.'s Resp. Br. at 30–33, 39–40, ECF No. 37-1.[1] Without this, Plaintiff has failed its obligation to identify to the Court what facts at issue in this case are disputed or unsupported.

As a final matter, Plaintiff's failure to respond properly to Defendant's Statement cannot be excused. Rather, "[t]his Circuit has long upheld strict compliance with the district court's local rules on summary judgment when invoked by the district court." *Harrison v. District of Columbia*, Civ. A. No. 00-3008 (RBW), 2006 WL 949856, at *4 (D.D.C. Apr. 10, 2006) (citing *Burke v. Gould*, 286 F.3d 513, 518 (D.C.Cir.2002)). Moreover, Plaintiff is represented by attorneys who must understand the rules of responding to a summary judgment motion.

For these reasons, the Court should construe Defendant's Statement as largely conceded for purposes of summary judgment.

## II.     It is Uncontested and Undisputed that the Forest Service Conducted a Reasonable Search

Plaintiff does not contest the reasonableness of the Forest Service's search in response to Plaintiff's FOIA requests, yet nonetheless, spills a lot of ink over its characterization of the Forest Service's response to those requests during which time the Forest Service was completing its reasonable search. *See* Pl.'s Br., at 13–16, 18 n.4, ECF No. 37-1. Thus, because Plaintiff does not argue the search was unreasonable, Plaintiff's characterizations of the Forest Service's response to its requests while conducting that search is immaterial. *See* Def.'s Resp. to Pl.'s Stmt. of Undisputed Material Facts, ("Def.'s Resp. Smt.") ¶¶ 2–11, 15–16, 18–19. Indeed, Plaintiff,

---

[1]     Unless otherwise indicated, page numbers refer to ECF/CMS pagination on electronically-filed documents.

likewise, raises no other claim that would implicate the Forest Service's response, including, for example, a policy and practice claim. *See* Pl.'s Br., at 18 n.4, ECF No. 37-1; Am. Compl., ECF No. 13. Because the undisputed record supports the reasonableness of the Forest Service's search for responsive records, the Court should grant Defendant summary judgment as to this issue. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) ("a district court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment,") (internal citations omitted).

To the extent Plaintiff's characterization of the Forest Service's response to its FOIA requests is material to determining the reasonableness of its search, Plaintiff's characterization is unsupported by the record. *See* Def.'s Resp. Smt. ¶¶ 2–11, 15–16, 18–19. Contrary to Plaintiff's representations that its requests were "bounced" around, the Forest Service deliberately transferred Plaintiff's November 22, 2022 FOIA Request ("November 2022 FOIA Request") several times based on its reasonable belief as to the location of any responsive documents. *See* Def.'s Br., at 19–20, ECF No. 35-1; *See* Pl.'s Resp. Stmt., ¶¶ 31–32, 34–36, ECF No. 37-3; Scofield Decl. ¶¶ 10, 15–22, ECF No. 35-3. Indeed, the Forest Service never transferred Plaintiff's second FOIA request, submitted on March 29, 2023 ("March 2023 FOIA Request"), because the Forest Service had already established where any potentially responsive records might be kept; thus, this request was submitted directly to the Southwest Regional Office for a response. *See* Pl.'s Resp. Stmt. ¶¶ 37–38, ECF No. 37-3; Scofield Decl. ¶¶ 23–25, ECF No. 35-3. Likewise, although the Forest Service sent a no-records response in June 2023 to both of Plaintiff's FOIA requests, Plaintiff is incorrect to describe this response as "final," given that it is undisputed the Forest Service then issued a final response on April 17, 2024, releasing two records. *See* Pl.'s Resp. Stmt. ¶¶ 38–39, ECF No. 37-3; Def.'s Resp. Stmt. ¶ 16; Scofield Decl. ¶¶ 24-29, ECF No. 35-3. As Ms. Scofield's

declaration explains, the Forest Service's initial no-records response was due to a misunderstanding as to whether Exemption 5's applicability could excuse the Forest Service from searching for responsive records. *See* Scofield Decl. ¶¶ 24–26, ECF No. 35-3. After correcting this misunderstanding, the Forest Service completed it search, the reasonableness of which, again, remains uncontested. *See id.*; *See* Pl.'s Br., at 18 n.4, ECF No. 37-1.

In the end, the undisputed record shows the Forest Service searched all locations reasonably believed to contain responsive records; therefore, the Court should grant summary judgment in the Forest Service's favor as to the reasonableness of its search. *See* Def.'s Br., at 18–21, ECF No. 35-1. For example, as Ms. Scofield explains, Gerald Sanchez, the Forest Service's Chief Appraiser for the Resolution Copper Project, was first assigned to respond to Plaintiff's November 2022 request because he was the only custodian believed to have responsive records. *See* Scofield Decl. ¶ 18. ECF No. 35-3; Pl.'s Resp. Stmt. ¶¶ 4, 6, 31, 35, 41, ECF No. 37-3. But while it is undisputed that Sanchez is the only Forest Service employee who has seen a copy of the Oak Flat Appraisal and has access to view the underlying data and information on which it is based, he had no records responsive to Plaintiff's request. *See* Pl.'s Resp. Stmt. ¶ 7, 34–36, 42, ECF No. 37-3. Rather, the Forest Service does not have possession of the Oak Flat Appraisal or any data submitted to form the basis for that appraisal because those documents are in the Appraiser's possession. *See* Scofield Decl. ¶ 31, ECF No. 35-3.

Thereafter, Tracy Parker, the Director of Lands and Minerals, completed a search for responsive records and found two responsive documents. *See* Pl.'s Resp. Stmt. ¶ 38, ECF No. 37-3. As Defendant previously explained, Mr. Parker searched his emails using key terms responsive to Plaintiff's request and found no responsive documents. *See id.* ¶ 45. This finding is consistent

with the undisputed facts that Sanchez was the only authorized employee to view the Oak Flat Appraisal and underlying data and information but was not able to take a copy of that material into his possession, and any communications Sanchez had about the Appraisal with the Appraiser was performed via Microsoft Teams and was not recorded. *See* Def.'s Br., at 20, ECF No. 35-1; Pl.'s Resp. Stmt. ¶¶ 42, 50, ECF No. 37-3. Mr. Parker then searched the only other location that would contain responsive records—a Pinyon (Box) folder for the Resolution Copper Project, accessible only by Parker and Sanchez. *See* Pl.'s Resp. Stmt. ¶ 46, ECF No. 37-3. There, Parker recovered the Technical Report and the Summary Report of the Oak Flat land parcel. *See id.* ¶¶ 47, 48. Parker further confirmed no other custodians were asked to search for responsive records because Parker and Sanchez were the only two employees involved in the Resolution Copper Project during the timeframe when the Oak Flat Appraisal was being completed and up to the time of the search for responsive records. *See id.* ¶ 49.

Thus, because the undisputed and uncontested record shows that the Forest Service conducted a reasonable search designed to gather all responsive records within its possession, and because Plaintiff fails to dispute otherwise, the Court should grant Defendant summary judgment on this issue.

## III. The Undisputed Record and Controlling Case Law Establish that the Forest Service Lacks Control Over the Oak Flat Appraisal.

In its response, Plaintiff argues that the Oak Flat Appraisal is an agency record over which the Forest Service exercises "constructive control." To support this argument, Plaintiff claims that (1) the Oak Flat Appraisal has been completed and already provided to the Forest Service, (2) the Oak Flat Appraisal will be retained by the Agency at the conclusion of the Secretary's review and made publicly available by statute, (3) the Appraiser is prohibited from making any independent disclosures of the Oak Flat Appraisal, and (4) the Forest Service has relied heavily on the Oak Flat

Appraisal for purposes of preparing the Agency's Technical Report and Summary Report. *See* Pl.'s Br., at 21, ECF No. 37-1. Plaintiff's arguments are unsupported by the record and lack merit.

First, contrary to Plaintiff's representations, the undisputed record shows the Oak Flat Appraisal was not provided to the Forest Service. Plaintiff relies solely on Ms. Scofield's declaration which stated, in parentheses, that the Appraiser "'provided' [the Oak Flat Appraisal] to the Chief Appraiser [of the Forest Service] …" *See* Pl.'s Resp. Stmt. ¶ 43, ECF No. 37-3. But Plaintiff conveniently ignores the remaining portion of the sentence in Ms. Scofield's declaration behind the ellipses, which explains that the word "provided" means only that "Sanchez was granted authorization to view [the Appraisal]" not that the Forest Service was given a copy of the Oak Flat Appraisal to keep in its possession. *See* Scofield Decl. ¶ 8, ECF No. 35-3; Def.'s Stmt. ¶ 12, ECF No. 35-2. Indeed, Plaintiff does not dispute that to view the Oak Flat Appraisal, Sanchez, the only Forest Service employee permitted to view that document, must use a password to access it in a virtual electronic vault maintained by the Appraiser to protect the Oak Flat Appraisal from disclosure and to limit the Forest Service's access to it. *See* Pl.'s Resp. Stmt. ¶¶ 7, 51–52, ECF No. 37-3. It is also undisputed that Sanchez cannot make any electronic copies of the Oak Flat Appraisal or take it into his possession. *See* Scofield Decl. ¶¶ 31, 34, ECF No. 35-3; Pl.'s Resp. Stmt. ¶ 53, ECF No. 37-3.

Plaintiff's reliance on old provisions of the appraisal contract to suggest the Appraiser already gave the Forest Service hard and electronic copies of the Oak Flat Appraisal, is also unsupported. *See* Pl.'s Br., at 13, ECF No. 37-1; Def.'s Resp. Stmt. ¶ 29. Rather, the April 2022 modification to the contract expressly limited the Forest Service's access to the Appraisal to protect the confidential information contained therein. Specifically, these contract modifications provide that "***During the deliberative appraisal review process***, the appraiser must make

confidential information available to the Forest Service Review Appraiser upon request, ***at a nongovernment location***, but such information will not be incorporated in a Forest Service system of records." Scofield Decl., Exh. 2, at 35, ECF No. 35-4 (emphasis in original); *see also* Scofield Decl. ¶ 7, ECF No. 35-3. Pursuant to the terms of the amended contract, the Forest Service and Appraiser understood that no hard or electronic copies of the Appraisal would be provided to the Forest Service for its possessions, and none have. *See* Scofield Suppl. Decl. ¶ 5. Indeed, this modification is consistent with other provisions in the original contract that provide that "[r]elease of the appraisals to . . . [United States Forest Service] personnel will occur after the appraisals have been reviewed and approved." Scofield Ex. 1, at 15, ECF No. 35-4; Scofield Supp. Decl. ¶ 4; Scofield Decl. ¶ 7, ECF No. 35-3.

Second, Plaintiff argues that the Forest Service has constructive control over the Appraisal because it will, at a minimum, retain the document at the conclusion of the Secretary's review and be made publicly available by statute. But Plaintiff's argument ignores controlling Supreme Court precedent in a similar case, which held that data in possession of an agency grantee was not an agency record subject to FOIA. *Forsham v. Harris*, 445 U.S. 169, 185–86 (1980). There, the Supreme Court explained that:

> Petitioners place great reliance on the fact that [the agency] has a right of access to the data, and a right if it so chooses to obtain permanent custody of the [grantee's] record. . . . But in this context the FOIA applies to records which have been *in fact* obtained, and not to records which merely *could have been* obtained."

*Id.* (emphasis in original). Likewise, in this case, the mere fact that the appraisal contract contemplates the release of the Oak Flat Appraisal to the Forest Service after it has been reviewed and approved, does not render it an agency document now because the Forest Service has not yet obtained that document. *See* Scofield Decl. ¶ 7, ECF No. 35-3. Nor, moreover, is the Forest Service under any Congressional mandate to take possession of the Oak Flat Appraisal. Contrary to

Plaintiff's representations, the land exchange statute expressly provides that the Forest Service does not have to obtain and release the Oak Flat Appraisal to the public. *See* 16 U.S.C. § 539p(c)(4)(B)(iv). Instead, the statute states: "Before consummating the land exchange under this section, the Secretary shall make the appraisals of the land to be exchanged (or a summary thereof) available for public review." *Id.* Thus, it is possible and sufficient, for example, for the Forest Service to release only the Summary Report to the public, without ever having to obtain the Oak Flat Appraisal itself.

Plaintiff next argues the Oak Flat Appraisal is in the Agency's control because the Appraiser is prohibited from making any independent disclosures of the document. In making this argument, and Plaintiff's other arguments to support its claim that the Defendant constructively controls the Appraisal, Plaintiff relies almost exclusively on *Burka v. U.S. Health & Human Serv.*, 87 F.3d 508, 515 (D.C. Cir. 1996), which is inapposite. In that case, the D.C. Circuit first found that the Department of Health and Human Service owned the data because of its "extensive supervision and control" over the contractor's collection and analysis of the data and prohibited its disclosure. Here, by contrast, the Forest Service has exercised absolutely no control over the Appraiser's collection and analysis of data because Congress mandated the Oak Flat Appraisal be prepared independently. *See* Scofield Decl. ¶ 6, ECF No. 35-3. Moreover, to the extent the Appraiser is limited from disclosing the Oak Flat Appraisal, those limitations were agreed upon mutually by the Appraiser under contract, to facilitate the gathering of confidential third-party information for purposes of completing the Oak Flat Appraisal. *See id.* ¶ 47. Thus, unlike in *Burka*, the Forest Service has never actively supervised or controlled the work of the Appraiser, nor has it unilaterally required the Appraiser to limit the Oak Flat Appraisal from disclosure.

Finally, Plaintiff argues the Forest Service exercises control over the Oak Flat Appraisal because the agency relied heavily on the Oak Flat Appraisal to prepare the Agency's Technical Report and Summary Report. But again, to support this argument, Plaintiff cites to *Burka*, the underlying facts of which are distinguishable from this case. In *Burka*, for example, the D.C. Circuit found the agency read and relied significantly on the information to write articles and develop policy. *See Burka*, 87 F.3d at 515. In contrast, the Forest Service's reliance on the Oak Flat Appraisal to create two records is not equivalent to relying on it to write articles and create policy. Indeed, it is undisputed that the Technical Report and the Summary Report have not even been shared with anyone else in or outside the Forest Service, other than for purposes of responding to Plaintiff's FOIA request. *See* Pl.'s Resp. Smt. ¶ 21, ECF No. 37-3. Moreover, because the Secretary has not reviewed these documents, they have not been used for any agency action. *See* Scofield Decl. ¶¶ 41–43, ECF No. 35-3.

Plaintiff relies on *Cause of Action Inst. v. OMB*, 10 F.4h 849, 854 (D.C. Cir. 2021) to argue the Forest Service has control over the Oak Flat Appraisal because it used and heavily relied on the Oak Flat Appraisal. *See* Pl.'s Br., at 21–22, ECF No. 37-1. But the factors the Court considered in *Cause of Action* lend more support to Defendant's case rather than support Plaintiff's case. In *Cause of Action*, the Court assessed whether the browsing histories of Office of Management and Budget ("OMB") employees were an agency record despite OMB's possession over the records. *See Cause of Action*, 10 F.4th at 857 (stating that "'FOIA is only directed at requiring agencies to disclose those "agency records" for which they have chosen to retain possession.'" (citing *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 151–52, (1980))). The Court determined that, because OMB relinquished control over the records, did not use the browsing

histories for any purpose and did not integrate the records with the agency's records system or files, the records were not an agency record under FOIA. *See id.* at 856–858.

Here, it is undisputed that the Forest Service likewise did not have any control over the Oak Flat Appraisal, which was created independently and maintained by the Appraiser in an electronic vault with access provided to only one Forest Service employee. *See* Pl.'s Resp. Stmt. ¶¶ 7, 51, 52, ECF No. 37-3. Nor moreover, has the Oak Flat Appraisal ever been integrated into the Forest Service's record system. *See id.* ¶ 54. Likewise, moreover, although Sanchez relied on the Oak Flat Appraisal to create the Technical Report and the Summary Report, neither of these reports have been shared internally to anyone other than those who processed the reports for purposes of responding to Plaintiff's FOIA request. *See id.* ¶¶ 13–15 21, 56. And while the Oak Flat Appraisal will eventually be reviewed and approved, until then, it cannot be said that the Oak Flat Appraisal, or the other two documents created from it, have been actually used by the Forest Service.

Thus, because Plaintiff cannot point to supported facts and controlling caselaw that establish the Forest Service has control over the Oak Flat Appraisal, the Court should find that document is not an agency record and grant the Forest Service summary judgment on this matter.

## IV.    The Undisputed Record Shows that the Forest Service Properly Withheld Exemption 4 Material

In its response, Plaintiff challenges the Forest Service's application of Exemption 4 and Resolution Copper's support for those withholdings in its separate summary judgment motion. *See* Resolution Copper Br., ECF No. 36. As an initial matter, the Forest Service adopts and incorporates Resolution Copper's arguments in support of the Forest Service's application of Exemption 4 to protect Resolution Copper's confidential commercial information.

A.    **The Forest Service Redacted Commercial Information.**

Plaintiff argues some information that the Forest Service redacted is not commercial information including (1) the names of consulting geologist, the consulting mine modeling firm, and names of the independent researchers; and (2) information concerning the comparable sales that were analyzed and other general information, such as their names, geographic locations, project stages, and land use classifications. *See* Pl.'s Br. at 26–28, ECF No. 37-1.

As an initial matter, the Forest service will lift the redactions covering the names of consulting geologist, modeling firms, and propriety modeling software included in the Technical Report and the Appraisal Summer. *See* Supplemental Declaration of Margaret Scofield ("Scofield Suppl. Decl.") ¶ 7. The pages in these reports where such information is located are listed in the Forest Service's supplemental declaration from Margert Scofield. *See id.* Plaintiff also claims, however, that the names of independent researchers is not commercial or financial information. *See* Pl.'s Br. at 26–28. But neither the Forest Service, nor Resolution Copper have argued that the names of independent researchers were withheld under Exemption 4.

Plaintiff next argues that comparable sales information of other parcels of land is not commercial or financial information because "there is no blanket exemption for anything having to do with real estate." Pl.'s Resp. Br., at 27, ECF No. 37-1. But Plaintiff's strawman argument misses the mark as Plaintiffs cites no authority that establishes that the identified information about parcels of land, in this case, used to provide specific comparable sales information is not commercial in nature. Specifically, as Defendant previously discussed, protected comparable sales information includes the geographic locations and descriptions of the comparable parcels of land, their respective metal content, associated property rights, and financing terms. *See* Scofield Decl. ¶ 45, ECF No. 35-3. Indeed, all this information is absolutely fundamental commercial information related to the market values of each comparable land sales and therefore commercial in nature. *See*

- 14 -

*Flathead Joint Bd. of Control v. U.S. Dep't of the Interior*, 309 F. Supp. 2d 1217, 1221 (D. Mont. 2004) (declaring that "water rights themselves are an object of commerce . . . that is bought and sold[.]"); *Starkey v. U.S. Dep't of Interior*, 238 F. Supp. 2d 1188, 1195 (S.D. Cal. 2002) (concluding that "well and water related information" on an Indian reservation is "commercial or financial in nature" because "'water is a precious, limited resource'").

Moreover, as Defendant previously argued and Plaintiff failed to address, the D.C. Circuit has held "Exemption 4 is not confined only to records that reveal basic commercial operations or relate to the income-producing aspects of a business." *Baker & Hostetler LLP v. U.S. Dept of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006) (cleaned up). Rather, "[t]he exemption reaches more broadly and applies . . . when the provider of the information has a commercial interest in the information submitted to the agency." *Id.* (cleaned up). Thus, as Defendant previously explained, information about comparable sales information that was provided by experts and mining reports have a commercial interest over that information, as well, which is to sell their reports on sales data for profit. *See* Def.'s Br. at 27, ECF No. 35-1.

Finally, Plaintiff does not challenge the Forest Service's remaining categories of information for which it has identified as commercial or financial information. *See id.*; *see also* Scofield Decl., ¶ 45, ECF No. 35-3. Therefore, the Court should find such information is commercial or financial for purposes of Exemption 4, as it relates to operations surrounding the business of mining metals and the assessment of market values. *See* Def.'s Br. at 26–28, ECF No. 35-1. Likewise, as Defendant previously explained, the providers of the remaining categories of information, including Resolution Copper and the Appraiser, have commercial and financial interests over that information as well. *See id.*

### B.      The Withheld Information Was Obtained from A Person

Plaintiff next disputes that some information withheld by the Forest Service under Exemption 4 is not information "obtained from a person." Notably, Plaintiff does not dispute that information gathered from mining experts and Resolution Copper meets the criteria of information obtained from a person. Rather, Plaintiff argues that (1) the Appraiser himself cannot be construed as a person for purposes of Exemption 4, and (2) because the Forest Service's Chief Appraiser wrote the Technical Report and the Summary Report, information in those reports cannot be construed as "obtained from a person." *See* Pl.'s Resp. Br. at 28–30, ECF No. 37-1. Plaintiff's arguments lack merit and it also fail to provide authority to support these arguments.

Plaintiff relies exclusively on *Colo. Wild Pub. Lands v. U.S. Forest Serv.,* 691 F. Supp. 3d 149, 165 (D.D.C. 2023), for the argument that the Appraiser cannot be construed as a person for purposes of Exemption 4. *See* Pl.'s Resp. Br. at 24–25, 28, ECF No. 37-1. But *Colorado Wild* is inapposite for two reasons. First, that case involved the application of Exemptions 5 and 6 only and did not assess whether, for purposes of Exemption 4, information gathered from an appraiser plainly satisfies the minimum showing the information originated outside the federal agency. Indeed, the Court in *Colorado Wild* expressly contemplated a situation, like in this case, where information provided by an appraiser could be both commercial information obtained from a person and protected under Exemption 4, and deliberative information, prepared for the Forest Service under consultation purposes, and protected under Exemption 5. *See Colorado Wild*, 691 F. Supp. 3d at 166. Specifically, in *Colorado Wild*, the Forest Service argued the foreseeable harm of releasing information contained in a draft appraisal under Exemption 5 would chill an appraiser's willingness to work with the Forest Service in the future if their work product were publicly released. *See id.*  The Court rejected this argument for various reasons, including that the

described harm is precisely the type of harm for which Exemption 4 protections are more appropriate. *See id.*

Second, *Colorado Wild* is inapposite because the withholdings at issue in that case were contained in draft appraisal reports prepared by the Appraiser in conjunction with the Forest Service. Here, by contrast, the records at issue include two reports prepared by the Forest Service's Chief Appraiser only, referencing the outside work of an Appraiser to independently assess the parcels of land to be exchange under Congressional mandate. *See* Pl.'s Resp. Stmt. ¶ 5, ECF No. ECF No. 37-3; Scofield Decl., ¶ 4, ECF No. 35-3.

Plaintiff next argues, without support, that because the Chief Appraiser "must have provided *some* original thought or calculation into" the Technical Report and the Summary Report, this information could not be construed as originating outside the Forest Service. *See* Pl.'s Resp. Br. at 28–29, ECF No. 37-1. But Plaintiff cites no support for this argument, which also ignores D.C. Circuit precedent that information is obtained from a person if such information was supplied to the agency by a person or "from which information supplied [by the a person] could be extrapolated." *See Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 530 (D.C. Cir. 1979); *see also Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 36 F. Supp. 3d 384, 401 (S.D.N.Y. 2014) (concerning Bureau of Land Management analysis of mine data provided by mining companies); *Freeman v. Bureau of Land Mgmt.*, 526 F. Supp. 2d 1178, 1188 (D. Or. 2007) (finding that government's research "piggyback[ed] upon [submitter's] data to such an extent that the government's data [was] not truly independent for purposes of Exemption 4"). Here too, Plaintiff takes issue with charts contained in the two reports that include columns comparing the Appraiser's calculations with the Forest Service's calculations. *See* Pl.'s Resp. Br. at 29–30, ECF No. 37-1. But these calculations are precisely the type of information from which submitter

information can be extrapolated and are therefore protected under Exemption 4. Indeed, as Scofield explained, the purpose of the Technical Report is to assess "the completeness and accuracy of the Appraisal," including whether "the Appraisal's conclusions, analyses, and opinions are reasonably supported with market data." Scofield Decl. ¶ 40, ECF No. 35-3; Pl.'s Resp. Stmt. ¶ 14, ECF No. 37-3.

### C.    All the Withheld Material is Confidential

Plaintiff argues that the Forest Service has not satisfied its showing that the withheld material is confidential for two reasons. First, Plaintiff claims the Court cannot rely on hearsay evidence to demonstrate that the commercial information obtained from mineral experts, providers of mining reports, and the lead Appraiser, are customarily kept confidential. *See* Pl.'s Resp. Br. at 30–33, ECF No. 37-1. Second, Plaintiff argues that, without assurance of confidentiality, information protected from disclosures cannot be construed as confidential. *See id.* at 30–38. Because, however, the Forest Service's evidence is capable of being converted to admissible evidence, it satisfies the evidentiary requirements to support summary judgment. Moreover, because neither the Supreme Court, nor the D.C. Circuit have ruled that assurances of confidentiality are necessary to protect information under Exemption 4, that the Oak Flat Appraisal might one day be publicly released does not strip confidential information customarily kept confidential from Exemption 4 protections.

As an initial matter, Plaintiff spends a significant amount of time arguing that Scofield's declaration comprises impermissible hearsay to support summary judgment. While "sheer hearsay"—namely that which the declarant "would not be permitted to testify about . . . .at trial"—is not permitted on summary judgment, evidence which is capable of being converted to testimony is still proper. *Gleklen v. Democratic Cong. Campaign Comm'n, Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000). Accordingly in *Brown v. Perez*, 835 F.3d 1223 (10th Cir. 2016), the case on which

Plaintiff largely relies, the Court expressly suggested that when no third-party representative submits a declaration, an agency can still offer hearsay statements to support the exemption if it represents that the hearsay declarant is available to testify at trial. *Id.* at 1232. Accordingly, in her supplemental declaration, Scofield provides the assurance that the information in her earlier declaration that supports the Forest Service's application of Exemption 4 to protect information provided by mineral experts, providers of mining reports, and the Lead Appraiser, Barry Weissenborn, can be converted into admissible evidence because contractually, Mr. Weissenborn is required to testify if called by the Department of Justice to testify. *See* Scofield Suppl. Decl. ¶ 8.

Indeed, as Scofield previously explained, "[t]he Forest Service conferred with the Lead Appraiser, Weissnenborn, who informed the Forest Service that when preparing the Appraisal, from which the Summary Report and Technical Report are derived, he obtained proprietary information from multiple sources, including [himself,] experts in the minerals field and providers of reports sold only to those[, like Weissenborn,] in the mining and appraisal industries. *See* Scofield Decl. ¶¶ 46, 52, ECF No. 35-3. Thus, were he called to testify, Weissenborn would affirm how his own proprietary information is customarily kept confidential, including the purchase of an electronic vault to protect such confidential information, and testify, from personal knowledge, about how the mineral experts and providers of mining reports maintain information as confidential by requiring Mr. Weissenborn to provide assurances of confidentiality over their information, as well. *See* Scofield Decl. ¶¶ 48–49, 53, ECF No. 35-3.

More importantly, as previously discussed, Plaintiff's response to Defendant's Statements of Fact does not contest the underlying facts in this case are supported by admissible evidence and, therefore, Defendant's Statements of Fact may be construed as uncontested for purposes of supporting summary judgment. *See* Fed. R. Civ. P. 56(e)(2); Standard Order, ¶ 5(d)(v), ECF No. 4.

Next, Plaintiff argues that information cannot be construed as confidential because "[a]ll parties were put on notice that the information from the [Oak Flat] Appraisal would be released to the public." Pl.'s Resp. Br. at 33, ECF No. 37-1. Plaintiff cites no authority for this argument, which essentially boils down to nothing more the claim that without assurances of confidentiality, information that actually and customarily kept confidential is not confidential. In *Food Marketing Inst. v. Argus Leader Media*, 588 U.S. 427 (2019), the Supreme Court "considered two conditions that might be required for information provided to the government to be confidential within the meaning of Exemption 4." *Id.* at 434. The first condition is "that information is 'customarily kept private, or at least closely held, by the person imparting it,'" and the second condition is "that 'the party receiving [the information] provides some assurance that it will remain secret.'" *Id.* While the Supreme Court ultimately required the first condition, neither it, nor the D.C. Circuit have addressed whether the second condition is necessary for information to be "confidential." *Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 118 (D.D.C. 2023). Thus, so long as the evidence in this case demonstrates that information is customarily kept confidential, the Court need not engage in any further inquiry into whether assurances of confidentiality were or were not otherwise provided by the government.

Here, Plaintiff does not dispute and the undisputed record shows that the Exemption 4 information protected in this case is customarily kept confidential. After conferring with the Appraiser, the Forest Service determined that information gathered from mineral experts and providers of mining reports is customarily kept confidential because it is not available publicly. *See* Def.'s Br. at 29–23, ECF No. 35-1; *see also* Pl.'s Resp. Stmt. ¶¶ 58–63, 66. Rather, such information is available to obtain by appraiser, like the Lead Appraiser in this case, Weissenborn, for payment and assurances that the information purchased would be protected under

confidentiality agreements. *See* Def.'s Br. at 30–31, ECF No. 35-1. To this end, Weissenborn informed the Forest Service that only after he provided such assurances, could he retrieve the information from mineral experts and mining reports that he needed. *See id.* at 31. Moreover, as Defendant previously discussed, the undisputed record also shows that protected information is actually kept confidential given that the Appraiser has kept all underlying data and information tightly secured in an electronic vault with notice on the Appraisal that the report and specific parts thereof are confidential. *See id.* at 32; Pl.'s Resp. Stmt. ¶¶ 51, 60–62, ECF No. 37-3.

Plaintiff argues that because the land exchange legislation, nonetheless, mandates public disclosure of the Appraisal, the Court cannot assume that the parties "customarily" treated the protected information as confidential. But this argument fails for two reasons. First, as Plaintiff quotes in its brief, the land exchange legislation clearly does not require the Oak Flat Appraisal to be made publicly available, merely a summary thereof. *See* 16 U.S.C. § 539p(c)(4)(B)(iv). Therefore, Plaintiff's reliance on the legislation alone is not sufficient to establish that the providers of information expected the Oak Flat Appraisal would one day be made public. Second, the undisputed record shows that, according to Weissenborn, all third parties were provided assurances that their confidential information would be protected under the full extent possible under law. *See* Pl.'s Resp. Stmt. ¶ 61, ECF No. 37-3. And Resolution Copper, for example, likewise was assured that its information would be kept confidential before it shared it. *See* Resolution Copper's Stmt. of Undisputed Material Facts ("Resolution Copper's Stmt."), ¶¶ 21–22, ECF No. 36-2.

Plaintiff argues, however, even if legislation did not strip confidential information of its confidentiality, the appraisal contract did where it provided that FOIA "provisions may result in the release of all or part of the appraisal report." Scofield Decl. ¶ 7, ECF No. 35-3; *see* Pl.'s Resp.

Br. at 35, ECF No. 37-1. But this argument is without merit because the next sentence in the contract further explains "[p]roviders of confidential information may request that information be kept confidential and closely held" in which case, the Appraisal should mark that information as "confidential." *See id.* Thus, in this case, the entire Appraisal and at multiple points throughout, is marked as "CONFIDENTIAL REPORT." Scofield Decl. ¶ 47, ECF No. 35-3.

Plaintiff relies on *Wash. Post Co. LLP v. U.S. Small Bus. Admin.*, 502 F. Supp. 3d 1 (D.D.C. 2020) for the proposition that notice that information would be made public renders that information without Exemption 4 protections. *See* Pl.'s Resp. Br. at 34, ECF No. 37-1. But *Washington Post*, is distinguishable because it involved an express statement that certain information provided by third parties would be released. *Id.* at 16. There is no such express assurance in this case.

Plaintiff next argues because the Oak Flat Appraisal is complete, the third-parties that provided the confidential information for that document have no expectation such information shall be kept confidential. *See* Pl.'s Br. at 36, 37-1. But this argument is once again unsupported, speculative, and without merit. Likewise, Plaintiff argues that the fact that the Summary Report and Technical Report are kept secured under a password protected folder with the Forest Service does not indicate how any underlying third-party information is treated confidentiality, by its owner. *See id.* at 37. But this strawman argument, ignores the detailed undisputed evidence in the record that discusses how each of the three providers of information do actually keep their own information confidential, which by Plaintiff's admission, is evidence sufficient to support a showing of actual confidentiality. *See* Pl.'s Resp. Stmt. ¶ 57–,68, ECF No. 37-3; Def.'s Br., at 29–33, ECF No. 35-1; Resolution Copper Stmt. ¶¶ 20–34, ECF No. 36-2.

Thus, Plaintiff's efforts argue that information is not protected under Exemption 4 in this case absence assurances of confidentiality is unsupported and without merit.

**D.      The Disclosure of Withheld Information Will Result in Foreseeable Harm**

Plaintiff argues that the Forest Service has failed to demonstrate that the information protected under Exemption 4, if released would result in foreseeable harm for three reasons. First, as to the Appraiser, the mineral experts, and providers of mining reports, Plaintiff claims that evidence of foreseeable harm is hearsay and impermissible. *See* Pl.'s Resp. Br. at 38–40, ECF No. 37-1. Second, Plaintiff argues that any evidence of foreseeable harm, with respect to all third-parties, including Resolution Copper, is too speculative. *See id.* at 38–42. Finally, Plaintiff argues that Resolution Copper cannot face foreseeable harm where it is the only company designated to receive the land on which to operating its mining business. *See id.* at 40–42.  These arguments lack merit.

With respect to Plaintiff's hearsay argument, as previously discussed, unless Plaintiff can show the evidence presented cannot be converted to admissible evidence at trial, the Court may still consider such testimony from Scofield, alone, to support a showing of foreseeable harm resulting from the disclosure of confidential commercial information provided by the Appraiser, mineral experts, and providers of mining reports. *See* Fed. R. Civ. P. 56(c)(B). And, here, Plaintiff has neither contested nor disputed Defendant's Statements of Fact, which the Court can deem undisputed. *See* Fed. R. Civ. P. 56(e)(2); Standard Order, ¶ 5(d)(v), ECF No. 4. Alternatively, and as previously discussed, Scofield's supplemental declaration affirms that the hearsay declarants' testimonies can be converted to admissible evidence were the Appraiser called to testify at trial. *See* Scofield Suppl. Decl. ¶ 8.

Next Plaintiff relies solely on *Wilson v. Fed. Commc'ns Comm'n*, Civ. A. No. 21-0895 (RMM), 2022 WL 4245485, at *13 (D.D.C. Sept. 15, 2022), to support its argument that the Forest

Service and Resolution Copper's testimony is too speculative because it relies on language such as "could" or "may" rather than "would" or "will" to explain how disclosure causes foreseeable harm. Plaintiff's argument is not entirely supported by the record. For example, it is undisputed that the Appraiser described to the Forest Service the harm that "would" affect its competitive business operations, if confidential information were disclosed. Pl.'s Resp. Stmt. ¶ 63, ECF No. 37-3. Likewise, mineral experts and providers of mining reports "would" face foreseeable harm if the value of their work were undermined by its public disclosure. *See id.* ¶ 67.

In addition, in a more recent opinion, the Court in *Organization for Competitive Markets v. Office of Inspector General,* Civ. A. No. 14-1902 (EGS), 2024 WL 4753818, at *7 (D.D.C. Nov. 12, 2024), found that agency and intervening third-party "sufficiently established the foreseeable harm that could occur if the withheld [Exemption 4] information . . . [were] released to the public." *Id.* Specifically, the Court found the release of commercial information to the public or to competitors "could foreseeably cause financial and competitive harm." *Id; see also BuzzFeed Inc. v. U.S. Dep't of Just.*, Civ. A. No. 19-1977 (EGS), 2023 WL 6847008, at *6 (D.D.C. Oct. 17, 2023) (defendants established that disclosure under Exemption 4 "can be reasonably foreseen to cause economic harm to the company(s) if disclosed" despite statements that disclosure "could put an investigation at risk'" and that information "'may include reference to case specific services.'"). Likewise, in this case, that confidential information, if released, could cause foreseeable harm, is sufficient. *See* Resolution Copper Stmt., ¶¶ 25, 29, 33, ECF NO. 36-2.

Lastly, Plaintiff argues that Resolution Copper cannot establish that the disclosure of its confidential information can cause foreseeable harm because it has no competitors to the land at issue in the land exchange. Although Defendant adopts and incorporates by reference Resolution Copper's response to this argument provided in its anticipated reply brief, the Forest Service notes

that Plaintiff's argument misses the mark. Resolution Copper's possession of the land to be exchanged is not simply to acquire the land via an equal exchange of land and other assets, but to mine copper deposits, for which Resolution Copper states it has other competitors. *See* Sterling Hundley Decl. ("Hundley Decl.") ¶¶ 8, 20, 21, 26, 27, 30, ECF No. 36-4; *see also People for the Ethical Treatment of Animals v. Dep't of Health & Human Serv. (PETA)*, 901 F.3d 343, 354 (D.C. Cir. 2018) (agreeing with the agency that disclosing the airline carriers and transport routes used by private importers would provide an unfair advantage to competitors who could thereby "enter the market without the startup costs associated with researching successful importation means and practices"); *Leopold v. Dep't of Just.*, Civ. A. No. 19-3192 (RC), 2021 WL 124489, *7 (D.D.C. Jan. 13, 2021) (finding that defendant met the standard of showing foreseeable harm when "[t]he release of [withheld] information could disadvantage [the submitter] and provide an unfair advantage to its competitors.").

## V.    The Undisputed Record Shows that the Forest Service Properly Withheld <u>Exemption 5 Material.</u>

Plaintiff does not dispute that the contested two documents—the Technical Report and the Summary Report—are intra-agency records and the withheld information contained within them is predecisional as required in order to apply Exemption 5 deliberative process protection. *See* Pl.'s Resp. Br. at 42, ECF No. 37-1 (challenging only that the reacted information is deliberative). Instead, Plaintiff purports to argue that the information withheld under Exemption 5 is not deliberative and the Forest Service failed to demonstrate foreseeable harm if the redacted Exemption 5 information were released.

### A.    The Withheld Information Redacted under Exemption 5 is Deliberative

In making this argument, Plaintiff completely ignores the four factors considered by courts when determining whether information withheld reflects the "give-and-take" of the consultative

process. *See* Def.'s Br. at 43–45, ECF No. 35-1 (citing *Judicial Watch, Inc. v. Department of Justice*, 20 F.4th 49, 55 (D.C. Cir. 2021)). Because Plaintiff fails to address these arguments, Plaintiff concedes them. *See Brett v. Brennan*, 404 F. Supp. 3d 52, 59 (D.D.C. 2019) ("It is well-understood that 'if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.'" (quoting *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014)).

Instead, Plaintiff argues that the protected information cannot be deliberative because most of the withheld information merely summarizes information contained in an outside final Oak Flat Appraisal and is therefore not the opinion of government employees. Separately, Plaintiff argues because the protected information includes factual information, it cannot be deliberative. Neither of these arguments have any merit.

First, Plaintiff alleges that the information withheld in the Technical Report and Summary Report is not deliberative because the two reports largely summarize information gathered from an outside Oak Flat Appraisal, instead. *See* Pl.'s Br. at 43–44, ECF No. 37-1. From these premises, Plaintiff argues this information cannot be considered opinions or recommendations of the Forest Service, and the only way to protect this information as deliberative, is to construe it as coming from a government consultant, i.e. the Appraiser. *See* Pl.'s Br. at 43–44, ECF No. 37-1. But Plaintiff cites absolutely no authority for this position. To the contrary, the D.C. Circuit has held that summarizing information, even public information, compiled to facilitate an agency's decision on a particular matter is inherently part of the agency's internal deliberation process and that selected information is protected under Exemption 5. *See Montrose Chemical Corp. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974); *see also ViroPharma Inc. v. HHS*, 839 F. Supp. 2d 184, 193–94 (D.D.C. 2012) (noting that "[t]he choice of what factual material and prior final agency opinions

to include or remove during the drafting process is itself often part of the deliberative process, and thus is properly exempt under Exemption 5"). Thus, the fact that the Forest Service's Chief Appraiser summarized information from an outside Oak Flat Appraisal is of no moment to the analysis of whether that information is deliberative. And Plaintiff's efforts to backdoor the outside Oak Flat Appraisal as an agency record by arguing otherwise is simply an attempt to manipulate FOIA to gain information over which FOIA does not extend.

Second, Plaintiff's argument that factual information contained in the Technical Report and Summary Report is not deliberative also lacks merit. The full D.C. Circuit has declared that with regard to the application of Exemption 5 to factual information, such factual information should be examined "in light of the policies and goals that underlie" the privilege and in "the context in which the materials are used." *Wolfe v. HHS*, 839 F.2d 768, 774 (D.C. Cir. 1998) (en banc). Accordingly, information that may be factual in nature when used by agency personnel to develop recommendations or to assist with agency decisionmaking, is "precisely the type of predecisional documents intended to fall under Exemption 5." *Brannum v. Dominguez*, 377 F. Supp. 2d 75, 83 (D.D.C. 2005). Here, as Defendant previously discussed, both the Technical Report and Summary Report were prepared to assist the Secretary and other decisionmakers assess the Appraisal's opinions regarding the value of the lands being exchange, including making sure those opinions were comprehensive and accurate. *See* Pl.'s Resp. Stmt. ¶ 14, ECF No. 37-3. Therefore, the information contained therein, even if factual, that addresses the opinion of the value of the parcels of land to be exchanged or information related thereto is protected deliberative information.

Plaintiff takes issue with the Forest Service's invocation of Exemption 5 withholdings to information about comparable sales analysis in the Summary Report, but not the Technical Report.

- 27 -

*See* Pl.'s Br. at 44, ECF No. 37-1. But inadvertent oversight does not mean the withholdings were applied arbitrarily, rather the same information should have been withheld under both withholdings. *See* Scofield Suppl. Decl. ¶ 11. Indeed, as Scofield previously explained, the concurrent application of Exemptions 4 and 5 to the same information is proper because "at bottom, all of the information withheld under Exemption 5 also reflects either the express proposed opinion of value placed on the parcels of land being exchanged, or at a minimum, information which can be compiled to discern an opinion of value on the parcels of land being exchanged, which is still being deliberated and has not been . . . approved by the Secretary." Scofield Decl. ¶ 57, ECF No. 35-3.

Plaintiff next alleges that the Forest Service withheld from both reports factual information concerning the comparable sales, such as their location, financing terms, mining methods, conditions of sale, project stage, resource classification, and zoning. *See* Pl.'s Br. at 44–45, ECF No. 37-1. But once again, this argument is unsupported because this information which can be used to determine the market value of the comparable sales, "at a minimum, . . . can be compiled to discern an opinion of the value of the parcels of land being exchanged," as well, which is predecisional as it is the very information that the Secretary must determine whether to approve. *See* Scofield Decl. ¶¶ 57, 59, ECF No. 35-3.

Plaintiff further takes issue with the Forest Service's redaction of other factual information, claiming that "the Forest Service provides no argument for how . . . independent studies and research, and other factual information," including transport costs, metal recovery, metal pricing, royalties, and the discount rate, "represent the opinions and deliberations of the Forest Service." Pl.'s Br., at 45, ECF No. 37-1. Plaintiff is, once again, mistaken. As Scofield's declaration explains, information withheld under Exemption 5 is being used specifically to assist the Secretary

determine whether to approve the parcel of land being exchanged, including whether to approve the final appraised value or opinion of value for the parcels of land being exchanged. *See* Scofield Decl. ¶ 58, ECF No. 35-3. As with the other factual information related to comparable land sales, the results of independent research, including the transport costs, metal recovery, metal pricing, royalties, and the discount rate, is all information that "express[es the] proposed opinion value placed on the parcels of land being exchanged, or at a minimum, [expresses] information which can be compiled to discern an opinion of value on the parcels of land to be exchange. *See id.* ¶ 57.

Plaintiff claims that these factual statements, including others, along with the Appraiser's opinions cannot be deemed deliberative because they do not reflect the opinion of the Chief Appraiser. But again, Plaintiff's arguments are not well taken, because under both case law and the record in this case, the information that the Chief Appraiser gathered to compile the two reports is, by itself deliberative because it is being used to assist the Secretary specifically determine whether to approve the value of the parcels of land being exchanged, tied into which are very sensitive considerations, including the proportion of land to cash value that would be allocated in the exchange to ensure that the value of land exchanged is equal as required under statue, and the non-monetary value placed on the sacredness of the Oak Flat site for local American Indian Tribes. *See* Scofield Decl. ¶¶ 62, 65, ECF No. 35-3; *see also Colorado Wild*, 691 F. Supp. 3d at 157 ("Both the appraisals and the [Technical Appraisal Review Report], which assesses the appraisals for accuracy and completeness, serve an important role in the process by ensuring that the exchanged lands are of approximately equal value, as required under statute"); *McKinley v. Bd. of Governors of Fed. Res. Sys.*, 849 F. Supp. 2d 47, 63-64 (D.D.C. 2012) (holding that "purely factual" material was protectable under Exemption 5 because "[defendant] culled selected facts and data from the mass of available information"); *see also Reliant Energy Power Gen., Inc. v. F.E.R.C.*, 520 F.

Supp. 2d 194, 205–06 (D.D.C. 2007) (protecting the "spreadsheets and tables that 'analyze raw data,'" because even though materials "are not themselves deliberative, their use by agency employees in writing the Staff Report renders them part of the deliberative process").

Thus, based on this analysis, and the analysis in Defendant's opening brief, which Plaintiff has ignored and therefore concedes, the Court should find that the information withheld under Exemption 5 is properly deemed deliberative and grant Defendant summary judgment on this issue

B.    **The Forest Service Sufficiently Demonstrated that the Release of Exemption 5 Material Would Cause Foreseeable Harm.**

Plaintiff argues that the Forest Service cannot establish that the premature release of information that reflects the opinion values a parcel of land that has yet to be approved by the Secretary would sow public confusion and impact ongoing tribal consultation process. But the Forest Service's aversion to the foreseeable harm at issue in this case is reasonable and Plaintiff's oversimplistic position is not.

1.    <u>The Release of Protected Information Will Sow Public Confusion.</u>

Plaintiff relies entirely on *Colorado Wild* to support its argument that the Forest Service has failed to show that the risk of public confusion rises above speculation. But *Colorado Wild* is an entirely inapt case to compare to the risk of confusion and harm that is reasonably foreseeable to take place in this case. While Plaintiff may dismissively construe the Forest Service's concern in this case as condescending, others might construe the government's concern over this risk and the complexities of interests tied thereto as an example of good governance.

In *Colorado Wild*, 691 F. Supp. 3d at 167, the Forest Service argued that the release of a calculation error withheld in a draft land appraisal, would sow public confusion because it might mislead the public as to the reasons for the Forest Service's eventual decision regarding the land

exchange. The Court rejected this argument stating that a "straightforward" explanation as to the error would clear up any public confusion. *See id.*

Unlike in *Colorado Wild*, however, the Forest Service is not withholding a simple calculation error in an old draft appraisal for a land exchange on which the Secretary has already issued a final decision. To the contrary, as Scofield has explained, here, the Secretary has yet to approve the value of the appraised parcel of land subject to the land exchange and therefore is seeking to withhold all information that reflects an opinion value for the land or could be used to determine that opinion value before the Secretary approves such value. *See* Scofield Decl. ¶ 64, ECF No. 35-3. Moreover, because the Secretary is not expected to weigh in on approving the value of the land exchange until certain other important events take place, were the appraisal value of the land released, prematurely, before the Secretary approved that value, the public might believe that these other important events were either completed, or worse, abandoned, jettisoned, or improperly ignored. *See id.* And given the number of actors involved in these ongoing events, containing the risk of this public confusion is anything but "straightforward." Thus, this is not a case where the public confusion surrounding the premature release of this opinion value is merely speculative. It is not only foreseeable but reasonable.

Indeed, as Defendant previously explained, because Congress recognized that the Oak Flat parcel of land contains the sacred Oak Flat site, Congress required the Secretary to engage in government-to-government consultations with the affected Indian Tribes to address concerns related to the land exchange. *See* Def.'s Br. at 10, ECF No. 35-1. Thus, until these conversations are completed, the Secretary is not expected to approve the value opinion for the land over which consultations are still occurring. *See* Scofield Decl. ¶ 64, ECF No. 35-3. Similarly, Congress required that the land exchange be governed by the National Environmental Policy Act, which

requires that an environmental impact statement be prepared before the Secretary can execute the land exchange. 16 U.S.C. §539p(c)(9)(B). Thus, the Secretary is also waiting for the completion of this final environmental impact statement before approving the value opinion for the parcels of land to be exchanged. *See* Def.'s Br. at 11, ECF No. 35-1; Scofield Decl. ¶ 68, ECF No. 35-3. Were the Oak Flat Appraisal's value of the land released, prematurely, however, before the Secretary approved that value, it would likely confuse the public into believing that either the tribal consultation process is completed, or worse abandoned, and the final impact statement is completed, or worse, not completed properly before the Secretary approved the land exchange. *See* Scofield ¶ 64.

Plaintiff suggests any public confusion could be contained easily by the Secretary using the Forest Service's public website to clear up any confusion, ensuring that the parties in ongoing litigation over the final environmental impact statement are all notified, along with that court, that the released opinion value for the land is not the actual approved value, and ensure that the Tribal consultation process remains ongoing, despite whatever consequences the premature opinion value might have on disrupting those ongoing consultation. *See* Pl.'s Resp. Br. at 47, ECF No. 37-1. Clearly the mitigation surrounding the spread of confusion associated with the release of protected information in this case is anything but straightforward and Plaintiff's dismissal of such concrete foreseeable harm it is unreasonable.

2.    The Release of Protected Information Will Affect Frank and Candid Tribal <u>Consultations.</u>

The Forest Service recognizes that Chairman Terry Ramber, of the San Carlos Apache Tribe, and Executive Director, Maria Dadgar, of the Inter Tribal Association of Arizona, declare that the release of the opinion value of the Oak Flat Appraisal concerning the Oak Flat land to be exchanged for a copper mine would facilitate rather than hinder on-going tribal consultations.

When Congress legislated the land exchange, it required the land subject to the exchange to be independently appraised and performed according to nationally recognized appraisal standards. 16 U.S.C. § 539p(c)(4). That Chairman Rambler sees the Appraisal as an avenue to "assess the sacred site valuation made by the appraiser and the Forest Service reviewers" when the criteria by which the land is evaluated is set by statute is the very reason why disclosure of this information is likely to chill and derail ongoing consultation focused on mitigating risks to the sacred site upon the executed land exchange. Terry Ramber Declaration, ¶ 12, ECF No. 37-7; *see* 16 U.S.C. § 539p(c)(3)(A)-(B). It is therefore at least reasonably foreseeable that the information disclosed would chill these consultations, which would in turn slow the process of completing the Resolution Copper Project in total. *See* Scofield Suppl. Decl. ¶ 9.

## I.    All Non-Exempt Reasonably Segregable Information Has Been Released.

Plaintiff argues that the Forest Service's support for meeting its segregability obligation is conclusory at best, but this argument is unsupported by the record. *See* Pl.'s Resp. Br., at 50, ECF No. 37-1. Here, Scofield affirmed the Forest Service's diligence in conducting a review to identify non-exempt material such that any further disclosure of information would implicate the harm protected by Exemptions 4, 5, and 6 at issue in this case. *See* Scofield Decl. ¶¶ 72–74, ECF No. 35-3. Alternatively, Plaintiff speculates without support that it is "highly suspect" that the majority of redacted information fits within both Exemption 4 and 5, despite the Forest Service's explanation to the contrary. *See* Pl.'s Resp. Br., at 50, ECF No. 37-1; Scofield Decl. ¶ 57, ECF No. 35-3. Plaintiff also speculates that it is "similarly suspicious" that factual information could not be disclosed under Exemption 5, even though clear precedent in this District recognizes otherwise. *See* Pl.'s Resp. Br., at 50, ECF No. 37-1; *Montrose Chemical Corp.*, 491 F.2d at 71. Because these arguments are entirely speculative, they do not overcome the presumption of regularity afforded

to the government to defeat a showing that the Forest Service met its segregability obligations. *See James Madison Project v. Dep't of Just.*, 302 F. Supp. 3d 12, 32 (D.D.C. 2018) (applying the presumption of regularity to cases involving an agency's compliance with their FOIA obligation to disclose reasonably segregable material); *see also Sussman v. U.S. Marshal Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (holding that a "quantum of evidence" is "required to overcome that presumption.").

Plaintiff argues that there are discrepancies in the Forest Service's application of withholdings to similar information across the withheld documents, which Plaintiff argues is evidence that more information should be released. *See* Pl.'s Resp. Br., at 50–51, ECF No. 37-1. This too is unsupported. To the contrary, to the extent the Forest Service failed to apply the same justifications to withhold the same information across the Technical Report and the Summary Report, or failed to apply withholdings to the "highest and best use" information on one occasion within one Technical Report, this does not mean that any further release of information not already disclosed comprises non-exempt information. *See* Scofield Suppl. Decl. ¶ 12. The Forest Service is willing to reconcile the discrepancies in its disclosures with a re-release, but cannot release any further information without implicating the protected interests protected by Exemptions 4, 5, and 6 and causing foreseeable harm. *See id.*

## VI.    The Court Should Dismiss Plaintiff's Attempt to Raise a Policy-and-Practice Claim.

Finally, Plaintiff argues that the Forest Service is acting according to a policy and practice that violates FOIA by including provisions in its contract that restrict the release of the Appraisal until after approval by the Secretary. *See* Pl.'s Br. at 22–24, ECF No. 37-1. But Plaintiff's Complaint has not included a policy and practice claim and cannot now be amended through summary judgment briefings. *See Budik v. Ashley*, 36 F. Supp. 3d 132, 144 (D.D.C. 2014), *aff'd* No. 14-5102, 2014 WL 6725743 (D.C. Cir. Nov. 12, 2014) (noting that it is a "well-established

principle of law in this Circuit that a plaintiff may not amend her complaint by making new allegations in her opposition brief.") (citing *Larson v. Nothrop Cor.*, 21 F.3d 1164, 1173–74 (D.C. Cir. 1994)); *see also* Fed. R. Civ. P. 15; LCvR 7(i), 15.1. Therefore, the Court should dismiss this claim entirely for failure to raise it in the pleadings and for failure to seek leave to amend the pleadings properly.

Federal Rule of Civil Procedure 8 requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1), (3). Plaintiff purports to seek summary judgment on a FOIA policy-or-practice claim regarding the Forest Service's contract provisions. But Plaintiff forfeited any such claim by failing to raise it in its complaint.

A FOIA policy-or-practice claim is "a claim that an agency policy or practice will impair the party's lawful access to information in the future." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988). A policy-or-practice claim is a discrete kind of FOIA claim, one that is distinct from—not merely a subset of, or theory supporting—a claim regarding "a specific request under the FOIA." *Id.; see also Khine v. U.S. Dep't of Homeland Sec.*, 943 F.3d 959, 965 (D.C. Cir. 2019) ("Policy-or-practice claims are an exception to the ordinary rule that disclosure of the requested information will moot a FOIA claim."). Indeed, unlike in *Colorado Wild,* on which Plaintiff solely relies to support its purported policy and practice claim, here, Plaintiff never alleged a policy and practice claim in the pleadings. *Compare Colorado Wild*, 691 F. Supp. 3d at 170, *with* Am. Compl., ECF No. 13. Indeed, Plaintiff does not allege any policy at issue on which to base any policy and practice claim, nor does it claim that Plaintiff was denied access to other appraisals on multiple occasions or that others were alternatively. *See Colorado Wild*, 691 F. Supp. 3d at 170; Am. Compl., ECF No. 13. Additionally, to show it has standing to bring the claim,

Plaintiff would have to allege that it has plans to continue to request similar information in the future, which Plaintiff fails to do. *See Colorado Wild*, 691 F. Supp. 3d at 171; Am. Compl., ECF No. 13. Thus, without amended the pleadings to include these elements of a policy and practice cliam, Plaintiff cannot bootstrap such claim to its case during the middle of summary judgment briefing.

\*   \*   \*

## CONCLUSION

For the foregoing reasons and the reasons contained in Defendant's brief in support of summary judgment, the Court should grant Defendant summary judgment on all claims in this case and deny Plaintiff summary judgment on all claims.

Dated: December 6, 2024                Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:    _____/s/ Anna D. Walker_____
       ANNA D. WALKER
       Assistant United States Attorney
       601 D Street, NW
       Washington, DC 20530
       <INSERT PHONE>

*Attorneys for the United States of America*